Good morning. May it please the court, Mary Gibbons for Appellant Rodney Allen. I'm asking the court if I may reserve five minutes. You're pro bono counsel, are you not? I'm appointed by the court, yes. You're appointed by the court. Thank you so much. I see you in many cases and you do a wonderful job. Thank you very much. Now, having warmed you up with that, let me ask you a question. We have two basic issues before us in this case. First of all, was the June 2004 Notice of Appeal timely filed for whatever reason? And if so, was the petition for writ of habeas properly filed, for lack of a better phrase? In other words, was the district court correct that equitable tolling applied because of his mental condition and was the district court correct in finding that the procedural default was excused because of his mental condition? And only if we find those two things in your favor do we ever get to the affirmative to your argument about the ineffective assistance counsel. So we certified four questions for appeal, but you've only dealt with two of them. We asked you to tell us whether the judge abused his discretion in finding that the Notice of Appeal was not timely filed, but you come back with a separate document rule and make a very persuasive argument on that ground, but you don't address the question we certified. And then you did not deal with the equitable tolling question that we certified. With that opening, go. Very well. Between the time that the COA was issued and the time that the matter was briefed, the Supreme Court dealt with this issue of the impact of late Notice of Appeals and the ability of a district court judge to extend time and in a rather, frankly, harsh opinion where a petitioner followed the district court judge's order in terms of timeliness, but the district court judge having been wrong about that, the petition was still precluded. So in my view, the issue as it was certified for by considering the Supreme Court's intervening decision and addressing the issues that are subsumed within that, which is the separate document rule. To the extent that the court would have preferred that I move for a modification of the COA, please consider that motion to be made at this point. But in my view, the Supreme Court's decision, intervening decision, was... Well, on the first one, I mean, my own personal view is that you'd have a tough time on saying that there was a 4A5 issue that would come out in your favor. And the separate document rule clearly is a very good argument. But let's just take the second and the third arguments. Yes. Because it was highly in dispute on equitable tolling and highly in dispute on the procedural default. Why didn't you brief that? Because quite honestly, Your Honor, I struggled with this to a great degree in terms of how an appellant is to construe a certificate of appealability. Well, you can't prevail, but you can't even get to the argument where you want to be unless you convince us that equitable tolling was appropriate and the procedural default was excused. And I am here to do that today. These really are the appellee's issues to raise. My client prevailed in the district court and was not seeking appellate review. But you to rebut when they raise them. Correct. And I didn't see anything... I mean, there's a good argument that if you're the appellee, you haven't necessarily waived it. But what we're trying to figure out here is why you didn't rebut it in writing. Or respond to the issues in the certificate of appealability. Exactly. That's where we really should... In my view, Your Honor, and I actually researched this quite extensively in terms of what a certificate of appealability means. Does it simply mean that it's appealable or is it a direction from the court? These are the things we want you to raise. I don't... Speaking only for myself, I don't want you to waste your time on that. I want you to tell us why you think the district court correctly ordered equitable tolling... found equitable tolling and why there was no procedural... why the procedural default was properly excused. Very well. In terms of the equitable tolling, as the court is aware, the district court held an evidentiary hearing on the issue of petitioner's mental condition at the relevant time during the period when he failed to file a variety of documents with the Pennsylvania court and then the additional year where he didn't file... an extra year and a half where he didn't file the petition in the federal court. The evidentiary hearing was rather lengthy and the at that hearing regarding his mental state. The appellee at this juncture seeks to introduce a large body of evidence that was never before the district court because they failed to obtain the documents in sufficient time and failed to present any expert testimony. Well, whose fault was that? That actually was the appellee's fault. Everyone is... Do you take issue with their conclusions or their statements in the brief? And I know the district court didn't go into it. That Mr. Allen only signed a limited waiver. Mr. Allen actually signed... It took a long time in doing that. This is actually explained in his testimony that the district court accepted which is that he signed a waiver that was the standard prison waiver form. He filled in the not highly relevant... As it turned out, it was within the period of time that the district court believed was relevant. It was when he stopped making filings in the various courts. He had always been, as the district court said, very conscientious about making his filings and then and then picks up again. And so this is... The records that were released were during that period of time. In fact, he did release some records and notwithstanding that, appellees didn't do anything with them. Ms. Gibbons, forgive me. I know that my colleagues are interested in what you're talking about and I think I may collaterally be interested as well. But as I understood it, we are reviewing an order of Judge Giles which found that his notice of appeal could not be told. And that was his order of December the 15th, 2005. And I don't understand why we are discussing matters that indeed are subordinate to that. Because if we had no jurisdiction, we have been advised that we can do nothing. And if the notice of appeal was not filed timely, we had no jurisdiction. And I was curious to know, although I don't like to divert you from the interesting discussion we've been having, I would like to know why Judge Giles' order of December 15th should not be honored by us after we had sent it back to him and we had said, determine whether or not the certificate of appealability should be treated as a notice of appeal. He says it cannot be. And he has entered an explanation and ordering to that effect. Now, I'd like to know, because if in fact we have no jurisdiction, there is no point in talking about any of the other matters. That's correct. I agree. As I attempted to address in the briefing, at the time that that order was issued, denying the construction of the application for a certificate of appealability as a functional notice of appeal, the law was different than it is now. The Supreme Court has undertaken to clarify the significance of the timely filing and the lack of power in the district court to extend. Well, are you suggesting we send it back again and we have Judge Giles again look at it in light of what you claim is the current state of the law? Well, certainly I would not, I did not suggest that. That would be one way to do it. That's what I want to know. This court is ultimately responsible for its own jurisdiction and for determining whether it has jurisdiction. I think that this court is perfectly capable of making that determination given the state of the law now. How did the Supreme Court change what Judge Giles' December 15th order decreed? The Supreme Court made it clear that under no circumstances did he have any power to extend time beyond the statutory time. And that even in the situation that the Supreme Court was dealing with, that when the district court did extend the time but extended it one day past the appropriate statutory time and the petitioner complied with that order, the petitioner was still out of luck and out of jurisdiction because the Supreme Court was very careful, I suppose it's better to say, to follow the exact letter of... But you don't argue any of this in your brief. You simply argue that the November 2004 Notice of Appeal was not a separate document. That's correct, and therefore it was timely. And therefore his Notice of Appeal was timely. But you have not addressed in writing the argument you're now making. We'll get you back in rebuttal. You have a long rebuttal time reserved. Good morning. Ann Palmer for Respondents, Donald Vaughn et al. A very good brief. Thank you very much. We'll try largely to rest on the papers, but I just wanted to address some of the questions that the panel highlighted and also just reiterate sort of what we see as the bottom line of this case being that Mr. Allen can't prevail on either procedural or substantive grounds because in both contexts he has consistently shown himself to be far too lucid, cogent, and engaged. So you're saying that the appeal was correctly before us because of the separate document rule then? Because you're now getting into the merits. Well, if possible, in deference to this court's expertise in matters of its own jurisdiction, we'd be happy to rest on the papers as to the jurisdictional issue. Is the separate document rule a jurisdictional rule? Well, we believe that the Rule 58A defect that Mr. Allen detected very late in the process is non-jurisdictional, and that can be waived. But obviously, jurisdiction as a general matter is non-waivable and can be raised by this court sua sponte at any time. But we would just note the ironies as to the jurisdiction that the district court here was never given a chance to fix the speaking order that's complained of now. And Rule 58A was designed to prevent confusion about the entry of an order, whether to prevent any confusion on the part of a future appellant as to the import of the document. And there's no question in this case that this was in order, adopting the report and recommendation, and that no one was ever confused about its import. We've had four years of litigation. Oh, I know. I know, but nevertheless, it was understood and responded to. This is considered to be civil. And what we said in Sendant is if you start giving reasoning or facts and background, et cetera, with regard to your order, then it doesn't comply with the separate document rule. The separate document rule is just have a one-sentence piece of paper that accompanies the order, and that didn't happen here. Yes, it was not the model contemplated under Rule 58A by any means. How do you distinguish Sendant? Well, I think in the brief, we noted that there was some discussion, but not, in my recollection of Sendant, the extensive discussion under that case. I'd have to look at it again more carefully. Sendant was a six-page order, five-and-a-quarter-page order. This was a three-and-an-eight-page order. That's correct. Is that really a big difference? Well, Judge Newcomer's order was not what it should have been, perhaps. But if it's non-jurisdictional, if the separate order document requirement is not jurisdictional, then even if it was violated, that requirement was violated, does that mean that we would not have jurisdiction? It's a complicated interaction, certainly, but there's been, as you pointed out, several years of litigation over the issue of the timeliness of the appeal, and only before this Court is the issue of the defect rate— This was never raised until the blue brief came in, four years later. So it is a complicated interaction, but the case law we cited did refer to 58A in very clear terms as being waivable. So it's a problem. What is your position on Judge Giles' order? What is your position? That Judge Giles' order was correct and properly applied— And if it is correct, can you tell me in what respect we review it? Respondent's position is that Judge Giles' order was correct, applied Rule 4A5 correctly, and that the time to appeal could not be extended on the basis argued earlier by Mr. Allen. Since then, Mr. Allen has argued, well, I'm not going to worry about that argument, I'm going to focus on the fact that Judge Newcomer's June of 2004 order— But we don't have Judge Newcomer's order before us for review, do we? You do, insofar as he's also appealed from the merits determination denying federal habeas relief. Well, that's the order—this is complicated, complicated background. That's the order we're trying to find out as to which—if it's timely. If the—what is it? The November—what is it? December 15th Giles' order. No, the June—June 15th, 2004. I've said November before, I misspoke. Was the June 15th, 2004 order timely? Because the certificate of appealability could be treated as a timely notice of appeal, correct? That's the merits determination Judge Newcomer made. That's the order that, if not timely, we're through. No jurisdiction, no. And the notice of appeal was not timely, as we've argued in our briefs, that the Rule A-5 determination by Judge Giles was correct and that there's no way that anything he subsequently filed could be treated as a motion to extend that deadline. We also believe that the Rule 58A defect does not excuse and alter the time of filing in the manner suggested by Mr. Allen, but, again, we're— So we could go one of two ways if we put aside waiver at this moment. We could either decide that the June 15th, 2004 order was violative of the separate document requirement, which I think is a non-jurisdictional requirement, or we could find that the June 15th, 2004 order was or was not timely, depending on whether we affirm Judge Giles or we reverse Judge Giles' determination on that score, correct? That's the decision, yes, Your Honor. That's the basic decision we must make as a matter of first principle. On the jurisdictional issue. But as to the other issues, and as the panel correctly pointed out, Mr. Allen's arguments as to tolling and default have—are literally being raised before this Court for the first time today. And just to—in order to respond briefly to those, as to the equitable tolling, and as a consequence, those arguments should be treated as waived. It's our position, notwithstanding the issue of Mr. Allen focusing on the appeal. Let me play a little devil's advocate. Okay. He won on those. We understand that. And—but it is—it puts us in a difficult position to be responding now. The only waiver you could raise is because they—Ms. Gibbons did not brief the two issues in response to our Certificate of Appealability. Right. But—but Mr. Allen won on those issues below, so it was not—he was not charged with the responsibility of raising them. That's true. But nevertheless, it's difficult to respond to arguments that have not previously been made. But we would just underscore that Mr. Allen—one of the—to look at the big picture in this case, Mr. Allen wants a new—wants the opportunity for a new trial, and one has to ask why. He was confronted with multiple life terms, the possibility of being sentenced, and given the victim impact testimony, which was really quite devastating, and also underscored that in almost every instance, Mr. Allen was the ringleader who directed his co-conspirator what to do and when. And I would just highlight, if there's any difficulty reading the police reports or supporting documentation that Mr. Lee Mandel, highly respected criminal defense attorney in Philadelphia, had before him when advising his client, we would like to make sure that the copies you have are legible, depending on what's on the—in the state record before you. But all of this is strikingly powerful on the point of Mr. Allen's lucidity at every stage during— But we only get there— Right. We only get there so fast. No, I know. But I wanted to underscore, though, that chronologically speaking, that lucidity extends throughout the course of the state court proceedings. And as you'll see when you review the testimony before Judge Newcomer, when he was trying to explain why he failed to file a federal habeas petition, the documentary evidence demonstrated very clearly that he was able to function at a very high level. And accordingly, we are asking this court to reverse Judge Newcomer as to equitable tolling and as to procedural default, because, as you say, we shouldn't even get to the merits in this case, because he failed to make the threshold showing required for equitable tolling or for default. And also, Judge Newcomer's conflation of those standards was improper as well, because they are different. Equitable tolling requires a different analysis than is required for exhaustion. Ms. Palmer, what's your strongest argument before us today? I don't know. I feel they're all very strong as to the equitable tolling and default and merits, because— Pick one of them that sticks its head above the water. Well, as a habeas practitioner, I'm compelled to say equitable tolling, because this court can't— Equitable tolling? Well, you asked the question. No, it's untimely. Well, I did. I give in. We can't get to default and we can't get to the merits if the petition, the habeas petition— You can't get even a decision on equitable tolling if we have no jurisdiction. Absolutely, but— But as a habeas practitioner, she wants a decision on equitable tolling. Okay. Well, you can—but it's important to remember that Judge Newcomer, we believe, committed reversible error as to the tolling decision and as to the default decision. And although he was correct as to the merits, because when he did get to the merits, he was confronted with an irrefutable case of a very cogent litigator, Mr. Allen. And again, one of the victims said very powerfully, if he's crazy, he's crazy like a fox, because— That was occurring to me just as you were speaking. Yeah. That was probably the thrust of your position here. Yes. I mean— But we don't get there yet. Yeah, we don't. But it is—there is a distinction and the guilty but mentally ill plea recognizes that. And, I mean, just look at the relevance determination that Mr. Allen made, independently of former counsel. I mean, we've had a very pleasant working relationship with Ms. Gibbons here, but with obtaining needed discovery for the equitable tolling hearing. And what's very striking about that whole sequence of events is that Mr. Allen himself made the relevance determination. He didn't think it was relevant, whether he was on medication before or after. And he repeatedly said, I didn't think it was relevant. So I think that just underscores the fact that he is a thinking litigator and was able to file many documents in state court throughout the period in question. And if the panel has any further questions, I'll be happy to answer them.  Rebuttal, Ms. Gibbons. If I may just address several points quickly. Rule 58, I think, is not jurisdictional, but I think that it's the trigger point for the jurisdictional event, which is the filing of the Notice of Appeal. In other words, it gives you a safe haven of 150 additional days within which to file. Correct. And Mr. Allen was within that time. But just on equitable tolling. Yes. When did his time run out? Was it September 9, 97? The last event in the state courts was September of 97. He then has a year until September of 98. So September of 98, and he files in 2001. He files in March of 2000. And somehow he claims that there was equitable tolling because he wasn't given a medication, but he wasn't even on medication in 99 and 2000. Well, he was being, his, he has no filings from, well, he has two filings in 2000, which are his nunc pro tonc, his application for reinstatement of his appellate rights. And then if that's denied in 2000, he files a motion for reconsideration. He goes back and tries again with the Pennsylvania Supreme Court in July of 2000. So he's trying to fix this. But let's assume in somehow, shortly after, somehow after 99, September 9, 98, excuse me, that he discovers that he's beyond the one year, but he was on medication. But if he's not on medication in 99 and 2000, why does he wait to 2001 to file something? How in the world can equitable tolling come into account in that situation? If equitable tolling ever applied, then he just, in effect, let it go. Well, I think that at that point, he's probably aware from his other colleagues or advisors at the prison that you got to exhaust. You got to, you got to at that point, make your way through the entire Pennsylvania prison or, excuse me, Pennsylvania court system. And so that's what he starts doing in 2000. But what we've been told you should do, I mean, I realize it's half of the fact, just file a protective certificate of appealability and then argue. But to wait two and a half years after the deadline had passed and then claim, I mean, it seems like what happened in this case is Judge Newcomer got upset with the folks on the other side for not presenting much evidence and just said, okay, there's equitable tolling. And then he said, well, if I decided equitable tolling, I got to decide procedural default. Well, I think that would be a terribly unfair and arbitrary way of looking at how Judge Newcomer made his decision. I think he had the opportunity. I don't think he was happy with them. But regardless of his happiness or not, I think that he heard sufficient evidence from Mr. Allen. He found Mr. Allen credible. And he found that there was this unexplained gap. But what he heard from Mr. Allen when there was the turnover late turned out to be largely or importantly untrue. Well, he's had the opportunity to cross-examine him and did. But they didn't have the documents with which to cross-examine him because he only signed a limited release. And the relevant documents for the years that were highly relevant were not turned over because he determined, he determined they'll give him the early documents, but he won't give him anything during the appropriate time period. And Judge Newcomer let him get away with it. Your Honor, with all due respect, my client is a mentally ill prisoner. And the other side is the state. They control the prisons. They have access to the documents. They have access to the doctors. They have access to all kinds of information about my client. Didn't he violate Judge Newcomer's order? The order was quite explicit as to what was to be released in the way of medical records to the state. And he never, he never complied with that. It was never clear that he personally had, was aware of Judge Newcomer's order and how it impacted his disclosure requirements. Well, was he represented at that time as given? He was represented at that time, yes. When you say he wasn't personally aware, you mean that the lawyer who represented him read Judge Newcomer's order, did not make it known to his client what was required, did not comply with it himself so that the state was at a disadvantage with respect to any of the medical did not send to him. Didn't that so? I mean, I know that you weren't there. I shouldn't raise my voice to you. That's all right. But we're talking. I'm not taking it personally. Okay, please don't. You should have seen what he did to me years ago. This is nothing. This is nothing. First of all, the state had access to Judge Newcomer's order as well. Of course. So they had an opportunity to hop on the phone and call Graterford and say, wait a minute, this release is all wrong. There's a violation. Come on, Ms. Gibbons. When I enter an order saying the plaintiff shall deliver to the defendant such and such a document by such and such a date, do you mean that the defendant at that point has the burden of getting the document or does the plaintiff have the burden of complying? That's really what we're talking about. I realize that it's the state of Pennsylvania. But by the same token, that when they get a document a day before the hearing and they can't really analyze it and they can't get the material that supports it, that they're at a bit of a disadvantage. Frankly, when they didn't have the document seven days before the hearing, why didn't they file a motion to compel? And then Judge Newcomer would have known. I don't know. Then he would have known there was this problem. We could have hashed out the problem with the limited release, the full release, the order. But right now, we're looking back now to a point where we're saying, well, there was this problem with the disclosure. There are problems with discovery in pretty much every case that comes down the pipe. And there are ways to deal with that. Motion to compel, motion to dismiss for discovery violation. I mean, I can go on. You've done a great job for your client. We appreciate it. I don't quite understand it. I just have one final question. Let's assume we get past equitable tolling. Let's assume we get past procedural default. Let's assume even for the moment that there was ineffective assistance of counsel, although that's highly debatable. What was the prejudice? The prejudice was that he could have had a trial and prevailed on an insanity defense. If the court reviews the three available psychiatric reports, it's not entirely clear. I did look at those. Three and maybe four. Maybe four. The fourth has eluded, I believe, both sides. At this juncture, going back to 94. But none of those were defense initiated. No, but they were independent parties. They're saying that, yeah, he's got problems, but it looks like it's under control. There could be a relapse at trial, but it looks like he understands what's the charges against him. It looks like he could defend against it. The first one was that he was marginally capable of entering a guilty plea. There was a real question if he was going to- But the first evaluation that's included in the record is the difficulties that might arise at a trial. Well, frankly, when you have a client who's that close to the precipice in terms of a trial, I personally would certainly have problems having that client waiving the whole slew of constitutional rights that one waives. The day after he's pled guilty, he thinks Ed Rendell is the president. He doesn't know what day it is or what date it is. I'm not going to say anything. No, we understand. Thank you very much. This case was very well argued. We will take it under advice. Should the court wish any further briefing, I would be most happy to accommodate that. Thank you.